UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-701-JDM

ALANNA C. YOUNG                                                                       PLAINTIFF

V.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                         DEFENDANT


## MEMORANDUM OPINION

The plaintiff, Alanna C. Young, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability insurance and supplemental security income benefits. Ms. Young asserts that the administrative law judge's findings were not supported by substantial evidence and must be overturned. After reviewing the parties' fact and law summaries and the administrative record, the court concludes that the ALJ erred in his analysis of the functional capacity limitations caused by Ms. Young's migraines. The court will remand the decision of the Commissioner of Social Security for further proceedings consistent with this memorandum opinion.

I.

Ms. Young applied for disability insurance benefits in May 2010, and alleged she became disabled in in October 2009,[1] due to back problems, depression, and anxiety.[2] After her

---

[1] Due to a typographical error Ms. Young's initial applications state that she became unable to work as of October 5, 1970, at which time she was only three months old at that time. Ms. Young later clarified this error and her disability onset date was amended to October 5, 2009. *See* Admin. R. at 19, 37, 135, 142.

applications were denied initially and on reconsideration, Ms. Young filed a request for a hearing before an administrative law judge ("ALJ").

The ALJ conducted the hearing in January 2012, and shortly thereafter issued a decision unfavorable to Ms. Young, in which he determined that she suffered from three severe impairments (migraine headaches, myofascial pain versus fibromyalgia, and obesity), but none of them met or equaled a Listed Impairment, and she retained the residual functional capacity to perform light work with certain non-exertional restrictions necessary to accommodate her physical and psychological impairments. Ms. Young timely appealed the administrative law judge's decision to the Appeals Council, which affirmed the decision of the ALJ. She then timely appealed to this court.

## II.

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, she must not go on to the next step. The five steps are as follows:

(1) At the first step, the ALJ consider the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, she is not disabled.

(2) At the second step, the ALJ consider the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.

(3) At the third step, the ALJ also considers the medical severity of the claimant's impairments. If the claimant has an impairment that meets or equals one listed in 20 C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement, the ALJ must find that the claimant is disabled.

---

[2] Admin. R. at 179.

Before the ALJ goes from step three to step four, she must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

> (4) At the fourth step, the ALJ must consider her assessment of the claimant's residual functional capacity and her past relevant work. If the claimant can still do her past relevant work, the ALJ must find that she is not disabled.
>
> (5) At the fifth and last step, the ALJ must consider her assessment of the claimant's residual functional capacity and her age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

In this appeal, Ms. Young generally asserts that the ALJ's opinion was not supported by substantial evidence, because he repeatedly mischaracterized the contents of the Administrative Record. She specifically asserts that the ALJ erred when he determined that her lower back pain was not a severe impairment at step two of his analysis and when he evaluated the effect of her migraines and her fibromyalgia on her residual functional capacity at step four of his analysis.

**III.**

Although a district court may not try a Social Security appeal *de novo*, it need not affirm the conclusions of the Commissioner of Social Security if an administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). The court concludes that the ALJ's opinion is replete with factual errors that undermine the validity of his conclusions regarding the credibility of Ms. Young's subjective complaints regarding her migraines, but neither his failure to deem her back pain a severe impairment, nor his evaluation of the credibility of her complaints regarding her fibromyalgia, were reversible error.

3

## A. Whether the ALJ Erred by Determining that Ms. Young's Back Pain Was Not a Severe Impairment

Ms. Young asserts that the ALJ's failure to deem her lower back pain a severe impairment was an error warranting remand, as evidenced by the existing documents in the record, as well as some treatment records prepared and submitted directly to the Appeals Council after the ALJ issued his decision.[3] The court disagrees.

The determination of whether a claimant suffers from any severe impairment is a *de minimis* hurdle, which is designed merely to screen out totally groundless claims. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of HHS,* 773 F.2d 85, 89 (6th Cir.1985). By this logic, it would seem that the ALJ's failure to include Ms. Young's back problems among her severe impairments might warrant remand. But, the Sixth Circuit consistently has held that an ALJ's failure to include a particular identified impairment among the impairments the ALJ deems severe, ordinarily will not constitute reversible error, *if* the ALJ deemed at least one of the claimant's other impairments severe and evaluated both the claimant's severe and non-severe impairments during the remainder of the evaluation process. *See, e.g., Maziarz v. Sec'y of HHS,* 837 F.2d 240, 244 (6th Cir.1987). The ALJ did so.

The ALJ discussed at some length the objective medical evidence regarding Ms. Young's claims of debilitating back pain during step two of his analysis, and observed that there did not exist sufficient objective evidence in the record to support any determination that Ms. Young's back pain was a severe impairment. Nevertheless, at subsequent steps in his analysis, the ALJ evaluated Ms. Young's subjective complaints and compared them to her treatment records and

---

[3] *See* Admin. R. at 289-99. Plaintiff does not request a remand pursuant to Sentence Six of 42 U.S.C. § 405(g), but merely asserts that the new evidence establishes that the ALJ erred in his analysis of her back pain. Evidence submitted after the ALJ has issued his opinion cannot be considered part of the record for substantial evidence review. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

the findings of the consultative physical examiner.[4] Although the ALJ found that Ms. Young's statements regarding the degree and severity of her back pain were not fully credible, the ALJ did not dismiss them entirely, and included several postural limitations in Ms. Young's residual functional capacity assessments.[5] Accordingly, the court concludes that, even if it were error for the ALJ not to include back pain among Ms. Young's severe impairments, it is legally irrelevant, because the ALJ continued to take into account the effect of her back pain in his application of the remaining steps of his evaluation.

### B. Whether the ALJ Erred in his Assessment of the Effect of Ms. Young's Migraines and Fibromyalgia on her Residual Functional Capacity

The ALJ's evaluation of the functional capacity limitations posed by Ms. Young's migraines and myofascial pain versus fibromyalgia is a different matter. Ms. Young asserts that the ALJ erred in discounting her credibility regarding her claimed limitations due to those impairments. The court agrees in part and disagrees in part.

#### 1. Ms. Young's Migraines

With respect to Ms. Young's migraines, the ALJ rejected her testimony regarding the effects of her migraines, and made the following remarks in support of that decision:

> The record shows that the claimant has only had complaints, and treatment for, migraine headaches since June 2010 and she has only sought treatment for this complaint on an infrequent basis since that time. For instance, after June 2010, she did not see her primary care provider for treatment again until December 2010, and did not return to her primary care provider after that time until November 2011.[6]

As the chart attached to this opinion reveals, however, none of those statements are true. *See* Attachment A. The record reveals that Ms. Young sought treatment for her migraines at least as early as August 2008, and frequently sought treatment for her migraines between June 2010 and

---

[4] Admin. R. at 24, 26.
[5] Admin. R. at 23-24.
[6] Admin. R. at 25.

5

November 2011, during which time she tried several different recommended medications prescribed by her doctors.

Similarly, the ALJ's statements that "[t]he infrequency of the claimant's migraine headaches is inconsistent with the degree of pain and extent of limitations she has alleged,"[7] and "[t]here is no evidence to show that the claimant reported experiencing the frequency or severity of migraine headaches to her treatment providers that she alleged at the hearing,"[8] are factually incorrect. At the hearing, Ms. Young stated that she experienced migraines two to three times each month, some of which last a whole week.[9] She reported that sometimes her medicine helps, if she is able to take it early enough. If not, she experiences nausea, vomiting, and sensitivity to light, must take additional medicine, and must lie quietly in a dark room until the pain and nausea diminish. These statements are entirely consistent with her reports to both her primary care providers, and the consultative medical and psychological examiners. *See* Attachment A.

The ALJ's remark that Ms. Young did not seek emergency medical care for her migraines since her alleged disability onset is factually correct, but that fact is of questionable value, given that the record clearly shows that Ms. Young consistently reported severe migraines since 2008 and has attempted, through doctor-assisted experimentation during regularly-scheduled appointments, to find a treatment protocol that provides her meaningful relief. How after-hours emergency care would more significantly advance her treatment, and thereby provide greater factual support for her claimed symptoms, is unclear to this court.

It is correct that the pain management clinic recommended that Ms. Young be evaluated by a neurologist if her migraines remained uncontrollable and, as of the date of the hearing, Ms. Young's headaches remained uncontrollable, but she had not yet been evaluated by a

---

[7] Admin. R. at 26.
[8] Admin. R. at 25.
[9] Admin. R. at 52-54.

neurologist. In making this observation, however, the ALJ failed to note two significant facts: (1) following that recommendation, Ms. Young agreed to try different medicines, at her doctor's suggestion, and (2) when those medicines were not fully successful, her doctor decided to have her eyes evaluated first, rather than refer her to a neurologist.

In sum, the court concludes that the ALJ's evaluation of Ms. Young's complaints regarding the severity of her migraines is premised on factual errors and significant omissions, instead of the requisite substantial evidence.

### 2. Ms. Young's Fibromyalgia

The ALJ's evaluation of Ms. Young's allegations of pain due to her fibromyalgia is occasionally lacking in accurate factual support, but not to the degree that his analysis of Ms. Young's migraines was. The ALJ stated: "there is no indication of a trigger point analysis of fibromyalgia, and she did not describe at the hearing how her fibromyalgia had been diagnosed."[10] This is only partially true. Ms. Young did not describe the mechanics of the diagnosis at her hearing, but there clearly is documentation of trigger point analysis in Ms. Young's treatment records.[11]

The larger problem, however, is that the Sixth Circuit repeatedly has stressed the difficulty of assessing the credibility of a claimant's complaints about fibromyalgia, because it is an unusual impairment that is diagnosed largely by exclusion, and its symptoms often are not supportable by objective medical evidence. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007); *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Nonetheless, a diagnosis of fibromyalgia does not automatically entitle Vance to

---

[10] Admin. R. at 26.
[11] Admin. R. at 385, 407.

disability benefits. *See Higgs,* 880 F.2d at 863 ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.")

In his attempt to determine the severity of Ms. Young's myofascial pain versus fibromyalgia, the ALJ reviewed and cited to the objective evidence in both Ms. Young's medical records and the report of the consultative physical examiner.[12] As noted previously, there were factual errors with respect to the ALJ's discussion of the treatment records, but he accurately cited the objective test results of the consultative examiner regarding her ability to sit, stand, ambulate, grip and otherwise move her joints without pain. Accordingly, the court concludes that the ALJ's evaluation of Ms. Young's complaints regarding her fibromyalgia is adequately supported by evidence in the record.

## IV. RECOMMENDATION

For the foregoing reasons, the court concludes that the final decision of the Commissioner is not supported by substantial evidence because it failed to include an accurate analysis of the effect of Ms. Young's migraines on her residual functional capacity. The court will, pursuant to 42 U.S.C. § 405(g), enter an order remanding this matter to the Commissioner for further proceedings.

DATE:

cc: counsel of record

---

[12] Admin. R. at 25-26.

# ATTACHMENT A

| PAGE | DATE | PROVIDER | NOTES |
|------|------|----------|-------|
| 301 | ? | Cypress Medical Associates | Patient reports migraines |
| 307 | 8/25/2008 | Cypress Medical Associates | Patient reports migraines on Adult Patient Questionnaire |
| 306 | 8/27/2008 | Cypress Medical Associates | Migraines diagnosis<br>Imitrex prescribed |
| 312-13 | 4/18/2010 | U of L Healthcare | Patient reports chronic headaches<br>Instructed to continue taking Imitrex |
| 393 | 6/22/2010 | U of L Family Medicine | History of migraines.<br>Occurring more than usual, now about 2 times a month.<br>On Imitrex nasal spray. |
| 315-18 | 7/6/2010 | Consultative Medical Examiner, Jules Barefoot | Current medications: Imitrex and Stadol<br>Ms. Young reports:<br>• History of migraines all her life and that her migraines are accompanied with nausea, vomiting, and photophobia<br>• Headaches occur 1-2 times each month<br>• She has not had an emergency room visit for severe headaches in more than 20 years<br>Diagnosis: migraines<br>No opinion offered regarding the effect of the migraines on Ms. Young's residual functional capacity. |
| 333-49 | 8/28/2010 | Consultative Psychological Examiner, Mark Parzych | Ms. Young reports:<br>• Taking Imitrex for migraines<br>• Migraines occur 2-3 times each month<br>• Some last 2-3 days, some last one week<br>Migraines would affect job performance, but Parzych stated he could not evaluate the effect of the migraines, because he is not a medical professional.<br>Medical problems (including migraines) need to be evaluated by a physician. |
| 392 | 10/1/2010 | U of L Family Medicine | Reported increase in headaches to more than 2 times a month with photophobia and nausea.<br>Headaches are debilitating.<br>Occasional relief with Imitrex nasal spray.<br>Cannot take oral agent due to nausea.<br>Changed medications and advised patient to keep headache diary.<br>Referred for eye exam. |
| 398 | 11/2010 | U of L Family Medicine | Fioricet (medication for migraines) listed among medications. |

| PAGE | DATE | PROVIDER | NOTES |
|---|---|---|---|
| 391 | 11/17/2010 | U of L Family Medicine | Migraines 2 times a month and last up to three days.<br>Imitrex reduces the pain, but not totally. |
| 389 | 1/11/2011 | U of L Family Medicine | Headaches |
| 379, 381 | 1/20/2011 | University Hospital | Patient complains of migraines that she has suffered since adolescence.<br>She describes an aura, nausea, vision changes and photophobia.<br>Migraines recently have been managed by her primary doctor who provides Fioricet, however she sees limited relief from the medication.<br>We will defer [to her primary care provider] for management of the migraines…however we would recommend a Neurology consultation if the problem persists. |
| 418-19 | 11/15/2011 | U of L Family Medicine | Patient seen for follow up regarding headaches.<br>Patient reports doing poorly – worsened: headache, nausea, vomiting, photophobia, phonophobia, paresthesias.<br>Diagnosis: Diagnosis: Classic Migraine (with Aura) with Intractable Migraine |
| 414, 416 | 12/29/2011 | U of L Family Medicine | Patient seen for follow up regarding headaches.<br>Atenolol has decreased the severity of the headaches, but they continue.<br>Symptoms: nausea, vomiting, photophobia, phonophobia.<br>Patient does better if Phenergan is taken at the start of the headache.<br>Diagnosis: Classic Migraine (with Aura) with Intractable Migraine |